# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LINDA REYNOLDS,**
**Claimant Below, Petitioner**

**vs.)    No. 22-ICA-199**      (BOR Appeal No. 2058203)
                          (JCN: 2021005312)

**WEST VIRGINIA DIVISION OF HIGHWAYS,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Claimant Linda Reynolds appeals from the decision of the Workers' Compensation Board of Review ("Board"). Employer West Virginia Division of Highways ("Division of Highways") timely filed a response.[1] Ms. Reynolds did not file a reply.

The issues presented on appeal are temporary total disability ("TTD"), treatment authorization, and a diagnosis update request. By separate orders, the claim administrator closed Ms. Reynolds' TTD benefits on July 9, 2021, denied authorization for an MRI and follow-up appointment on August 4, 2021, and denied Ms. Reynolds' diagnosis update request on September 1, 2021. The Office of Judges ("OOJ") affirmed each of those decisions by order dated April 18, 2022. On September 27, 2022, the Board issued an order adopting the OOJ's findings of facts and conclusions of law, affirming its ruling below.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. As explained below, we find that based upon recent precedent, the Board erred by adopting the findings and conclusions of the OOJ. Accordingly, a memorandum decision vacating and remanding the Board's decision is appropriate under the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure.

On September 21, 2020, Ms. Reynolds was working for the Division of Highways as a CW-II heavy equipment operator when she sustained compensable injuries following a fall while exiting her dump truck. She filed a workers' compensation claim and, on September 29, 2020, the claim administrator held her claim compensable for bilateral elbow contusions. Following review of the medical records from her date of injury, the

---

[1] Linda Reynolds is represented by J. Thomas Greene, Esq. and T. Colin Greene, Esq. The West Virginia Division of Highways is represented by Steven K. Wellman, Esq. and James W. Heslep, Esq.

1

claim administrator issued an order on October 1, 2020, adding ligament sprain of the cervical spine, unspecified strain of the muscle/tendon, strain of the shoulder/upper on the left, right and left elbow contusions, contusion of other part of the head, unspecified head injury, and strain of the muscle fascia and tendon at the neck as compensable conditions. The claim administrator's order also noted a minor head injury, cervical strain, left shoulder strain and multiple contusions. Ms. Reynolds was referred to Dr. Russell Biundo, M.D. with the Spine and Pain Clinic of WVU Neurosurgery at United Hospital Center for follow up care.

On October 28, 2020, Ms. Reynolds underwent MRIs of the thoracic and lumbar spine and both scans revealed multilevel degenerative changes. On November 9, 2020, a progress note was completed by Gary Barcinas, PA-C and approved by Dr. Biundo. The progress note indicated that Ms. Reynolds was evaluated and received treatment for pain in her thoracic and lumbar spine with pain radiating in the right leg. Mr. Barcinas' diagnoses were lumbar radiculopathy and lumbar foraminal stenosis with a recommendation for physical therapy and a referral for L4-L5 lumbar epidural steroid injections.

Following a series of injections, Dr. Biundo indicated in a January 4, 2021, progress note that Ms. Reynolds was experiencing worsening lumbosacral pain that radiated through her right hip and right lateral lower extremity. The report stated that physical therapy had failed to provide relief or improvement. Dr. Biundo diagnosed Ms. Reynolds with lumbar spondylosis, lumbar stenosis, lumbar radiculopathy, and lumbar strain. Ms. Reynolds was referred to Dr. Bill Underwood, M.D. for a second opinion.

Ms. Reynolds was evaluated by Dr. Underwood on January 18, 2021. Ms. Reynolds reported thoracolumbar back pain with radiation into the entire right lower extremity with associated weakness and she denied any radicular pain in the left lower extremity. Dr. Underwood's diagnosis was annular tear of lumbar disc, degenerative lumbar spinal stenosis, protrusion of lumbar intervertebral disc, degenerative joint disease, facet hypertrophy of the lumbar region, and lumbar back pain with radiculopathy affecting the right lower extremity. Dr. Underwood recommended surgical intervention through a L4-L5 decompressive laminotomy.

At the request of the claim administrator, a file review was performed by Dr. James Dauphin, M.D. on January 20, 2021, regarding Dr. Underwood's surgical recommendation. Dr. Dauphin opined that the surgery had not been proven to be related to Ms. Reynolds' injury and therefore should not be approved for payment. Dr. Dauphin further opined that the multilevel disc degeneration in Ms. Reynolds' lumbar spine was not related to her compensable injury, nor was the condition of lumbar spinal stenosis for which the proposed surgery was intended. Based on Dr. Dauphin's report, the claim administrator denied surgical authorization on January 26, 2021.

On April 29, 2021, Ms. Reynolds underwent an independent medical examination ("IME") performed by Dr. Scott Rainey, D.O. In his report, Dr. Rainey specifically noted that despite her multiple approved diagnoses, he was only asked to evaluate Ms. Reynolds' compensable condition of ligaments sprain of the lumbar spine. He found that Ms. Reynolds' injury was consistent with the diagnosis and her treatment was appropriate. However, Dr. Rainey found Ms. Reynolds had reached maximum medical improvement ("MMI") for that condition. Regarding Dr. Underwood's surgical recommendation, Dr. Rainey opined that Ms. Reynolds' symptoms for which the surgery was designed, were from preexisting degeneration and not work related. Dr. Rainey rated Ms. Reynolds' whole person impairment ("WPI") at 0% and she was fully cleared to return to work.

On May 3, 2021, Dr. Biundo diagnosed Ms. Reynolds with lumbar stenosis and lumbar herniated nucleus pulposus. Dr. Biundo placed Ms. Reynolds off work as she waited for the claim administrator to approve surgical intervention. On June 23, 2021, the claim administrator again denied the surgery request.

Throughout her treatment, Ms. Reynolds' back condition and associated pain continued to worsen resulting in Dr. Biundo and Dr. Underwood both making additional diagnoses. As a result, multiple diagnosis update requests were made, as well as subsequent treatment requests seeking approval for an MRI and surgical intervention. In response to these requests, the claim administrator sought additional file reviews. According to the record, these reviews were completed by Dr. Syam Stoll, M.D. and Dr. Rebecca Thaxton, M.D. whose reports opined that the requested diagnoses, MRI, and surgical intervention were related to preexisting degenerative conditions and not causally related to Ms. Reynolds' compensable injury. Based on those opinions, the claim administrator denied each of Ms. Reynolds' requests. Included in those denials was the September 1, 2021, claim administrator order that denied Ms. Reynolds' most recent diagnosis update request to hold the condition of "protrusion of intervertebral disc of lumbar," among others, as compensable.

On September 23, 2021, Dr. Underwood performed a right L3-4, L4-5 decompressive laminotomy on Ms. Reynolds. The post-operative diagnosis was protrusion of intervertebral disc. The surgery was paid for by Ms. Reynolds' private insurance. On January 12, 2022, an IME was performed by Dr. Jennifer Lultschik. Dr. Lultschik opined that Ms. Reynolds' compensable injury of ligaments sprain of the lumbar spine had reached pre-injury status and placed Ms. Reynolds at 1% WPI. Dr. Lultschik further opined that Ms. Reynolds' other persistent symptoms were a result of preexisting degenerative conditions that were unrelated to her compensable injury.

Ms. Reynolds protested and the OOJ issued its order on April 18, 2022, affirming all three claim administrator's decisions. Specifically, with respect to the denial of the diagnosis update, the OOJ found that Drs. Dauphin, Stoll, Thaxton, Rainey, and Lultschik all determined Ms. Reynolds' degenerative conditions preexisted her injury, and as a result,

Ms. Reynolds' request for the L4-L5 decompressive laminotomy procedure was a treatment for non-compensable conditions. The OOJ did acknowledge that Ms. Reynolds' deposition testimony reflected she was asymptomatic prior to the date of her injury and that Ms. Reynolds had not previously received treatment for the same. However, the OOJ found that even if Ms. Reynolds' degenerative conditions were aggravated by the work injury, she failed to prove the discrete new injury requirement set forth in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016).

Ms. Reynolds timely appealed the OOJ's ruling to the Board. On September 27, 2022, the Board issued its order upholding the OOJ's decision. Ms. Reynolds now appeals the Boards' ruling to this Court.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n,* No. 22-ICA-10, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17546598, at *4 (Ct. App. Dec. 9, 2022).

As part of her appeal, Ms. Reynolds argues the Board erred by failing to apply our Supreme Court of Appeals' recent holding in *Moore v. ICG Tygart Valley, LLC*, ___ W. Va. ___, 879 S.E.2d 779 (2022), to determine whether the diagnosis for protrusion of intervertebral disc is compensable. Prior to *Moore*, Syllabus Point 3 of *Gill* created a general rule that,

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent

4

that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

236 W. Va. at 738, 783 S.E.2d at 858. However, Syllabus Point 5 of *Moore* elaborated on *Gill* stating that,

[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

___ W. Va. at ___, 879 S.E.2d at 781.

In the present case, the record is devoid of evidence suggesting that Ms. Reynolds' thoracic or lumbar spine were injured or symptomatic prior to her injury of September 21, 2020. Ms. Reynolds argues her compensable injury altered her spine and that her continued medical treatment for the diagnosis of protrusion of the intervertebral disc is causally related to her compensable injury. While there is some medical evidence to suggest that this protrusion was the result of preexisting degenerative conditions, it still must be determined if these preexisting conditions were, as Ms. Reynolds claims, asymptomatic prior to the compensable injury.

Likewise, because the nature of the accident raises a presumption of causation related to the symptoms that manifested after the injury, we find that the Board erred by failing to apply *Moore* when considering compensability for the diagnosis of protrusion of the intervertebral disc. As such, we vacate the Board's decision and remand the matter for further hearing. We find our application of *Moore* to be consistent with its recent application in decisions by our Supreme Court of Appeals. *See Click v. Arcelormittal USA*, No. 21-0128, 2022 WL 10219744, at * 3 (W. Va. Oct. 18, 2022) (memorandum decision) (reversed and remanded to determine whether preexisting left knee meniscus tear was asymptomatic at the time of compensable injury); *McKinney v. Pinnacle Mining Co.*, No. 21-0222, 2022 WL 10219792, at * 4 (W. Va. Oct. 18, 2022) (memorandum decision) (reversed and remanded to determine whether symptoms of an asymptomatic preexisting condition were manifested as result of compensable injury); *Owens v. Bundy Auger Mining, Inc.*, 20-0664, 2022 WL 10218882, at *3 (W. Va. Oct. 18, 2022) (memorandum decision) (reversed and remanded to determine whether current symptoms resulting from degenerative conditions were asymptomatic prior the compensable injury).

Further, we recognize that since the initial rulings in this case, the review process for workers' compensation claims has changed. West Virginia Code § 23-5-8a(a) (2022) provides that,

> [t]he Workers' Compensation Office of Administrative Law Judges, referred to as the Office of Judges, shall terminate on or before October 1, 2022, as provided in §23-5-8b of this code. All powers and duties of the Office of Judges to review objections, protests, or any other matter authorized by this chapter, shall be transferred to the Workers' Compensation Board of Review on July 1, 2022: *Provided*, That any objection or other matter filed pursuant to this chapter and pending before the Office of Judges upon its termination, in which a final decision has not been issued, shall also be transferred to the Workers' Compensation Board of Review as provided in §23-5-8b of this code.

Accordingly, we vacate and remand the case to the Board for further development of the evidentiary record and analysis under *Moore*, consistent with this decision.

Vacated and Remanded with Directions.

**ISSUED:** February 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating